UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ROY DAVID KINARD,

        Plaintiff,


v.                                      Case No. 3:19-cv-490-J-34JRK


CENTURION OF FLORIDA,
LLC, et al.,

        Defendants.

_____

## **<u>ORDER</u>**

### I.    **Status**

Plaintiff Roy Kinard, an inmate in the custody of the Florida Department of Corrections, initiated this action on April 29, 2019,[1] by filing a pro se Civil Rights Complaint (Complaint; Doc. 1) pursuant to 42 U.S.C. § 1983. Kinard is proceeding on a first amended complaint (First Amended Complaint; Doc. 70), filed, with the assistance of counsel, on November 1, 2019. In the First Amended Complaint, Kinard names as defendants the Florida Department of Corrections (FDOC), Centurion of Florida, LLC (Centurion), and Corizon Health, Inc. (Corizon). Kinard, who alleges he suffers from the hepatitis C virus (HCV), argues that Defendants violated the Eighth Amendment, Title II of the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act

---

[1] See <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (mailbox rule).

(RA) when they allegedly created and implemented a cost-savings policy that sanctioned the denial of medically necessary treatment for Kinard's HCV infection. As relief, Kinard seeks compensatory and punitive damages as well as attorney's fees and costs. Before the Court are Defendants' motions to dismiss. See Defendant Corizon Health, Inc.'s Motion to Dismiss (Corizon Motion; Doc. 77); Motion by Florida Department of Corrections to Dismiss First Amended Complaint (FDOC Motion; Doc. 88); and Centurion of Florida, LLC's Motion to Dismiss Count III of the First Amended Complaint (Centurion Motion; Doc. 89). Kinard filed responses in opposition to the motions. See Plaintiff's Response in Opposition to Defendant Corizon Health Inc.'s Motion to Dismiss (Response to Corizon Motion; Doc. 81); Plaintiff's Response in Opposition to Defendant Florida Department of Corrections' Motion to Dismiss (Response to FDOC Motion; Doc. 90); and Plaintiff's Response in Opposition to the Defendant Centurion of Florida, LLC's Motion to Dismiss (Response to Centurion Motion; Doc. 91). Each Defendant filed a reply to Kinard's responses. See Defendant Corizon Health, Inc.'s Reply Memorandum in Support of its Motion to Dismiss (Corizon Reply; Doc. 87); Reply to Plaintiff's Response to Motion to Dismiss (FDOC Reply; Doc. 97); and Defendant Centurion of Florida, LLC's Reply in Support of Motion to Dismiss (Centurion Reply; Doc. 98). The Motion is ripe for review.

## II.    Kinard's Allegations

In the First Amended Complaint, Kinard asserts three claims. First Amended Complaint at 20-29. As Count One, Kinard alleges that his HCV diagnosis constitutes a disability under the ADA. He contends the FDOC violated the ADA by discriminating against him based on his disability when it withheld medical treatment in the form of direct-acting antiviral drugs (DAA) from him, while not withholding medical treatment from

prisoners with other disabilities or who are not disabled. Id. at 20-24. In Count Two, Kinard alleges that FDOC violated the RA when it excluded Kinard from receiving DAA based on his HCV disability. Id. at 25-26. Lastly, in Count Three Kinard contends that Corizon and Centurion exhibited deliberatele indifference to his medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment when they refused to prescribe him DAA to treat his HCV. Id. at 27-29. Underlying all three claims is Kinard's assertion that Defendants created and implemented a cost-savings policy that resulted in the denial of DAA to prisoners diagnosed with HCV, despite the fact that treatment with DAA is more effective than other treatments and has been the standard of care for treatment of HCV since 2014. Id. at 5-19.

### III.    Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has

facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[2] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th

---

[2] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 706).

## IV.    Eighth Amendment Standard

Pursuant to the Eighth Amendment of the United States Constitution, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v.</u> <u>Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." <u>Oliver v. Fuhrman</u>, 739 F. App'x 968, 969 (11th Cir. 2018) (citing <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. <u>Id.</u> The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. <u>Id.</u> The Eighth Amendment guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. <u>Id.</u>

> Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. <u>Id.</u> This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. <u>Farrow v. West</u>, 320 F.3d 1235, 1245 (11th Cir. 2003).

Id. at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

As it relates to medical care, "[t]he Supreme Court has interpreted the Eighth Amendment to prohibit 'deliberate indifference to serious medical needs of prisoners.'" Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The Eleventh Circuit has explained that

> To prevail on a deliberate indifference claim, [a plaintiff] must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir.2009). To establish deliberate indifference, [a plaintiff] must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir.2010) (alteration in original). The defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and then actually draw that inference. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir.2003) (quotation omitted).

Easley v. Dep't of Corr., 590 F. App'x 860, 868 (11th Cir. 2014). "For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011) (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991)); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem).

Notably, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). As such, a complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Moreover, the Eleventh Circuit has stated that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

## V.    FDOC Motion

FDOC contends that the Court should dismiss the claims against it for the following three reasons:  (1) FDOC is entitled to Eleventh Amendment immunity against a cause of action under the ADA; (2) the statute of limitations bars the causes of action raised in Counts One and Two; and (3) Kinard has failed to state a claim upon which relief can be

granted because he failed to sufficiently allege that FDOC discriminated against him because of a disability. The Court will address each argument separately.

## Eleventh Amendment Immunity

Pursuant to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. However, Title II of the ADA provides, in pertinent part, that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The United States Supreme Court has held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." United States v. Georgia, 546 U.S. 151, 159 (2006) (emphasis in original). Thus, a public entity cannot avail itself of Eleventh Amendment immunity for "conduct that violates both Title II and the Fourteenth Amendment." Black v. Wigington, 811 F.3d 1259, 1269 (11th Cir. 2016) (citing United States v. Georgia, 546 U.S. at 159).

FDOC acknowledges that Title II of the ADA generally abrogated the States' Eleventh Amendment immunity but argues that in order for Kinard to take advantage of that abrogation, Kinard must establish that FDOC actually violated the Eighth Amendment. FDOC Motion at 5. According to FDOC, Kinard has not sufficiently alleged that FDOC was deliberately indifferent because the allegations in the First Amended Complaint show that prison staff regularly monitored Kinard's HCV infection and

determined his condition was stable such that he did not meet FDOC's guidelines for treatment. Id. at 8. FDOC maintains that these allegations demonstrate that it did not disregard any risk of serious harm. Id. Moreover, FDOC notes that Kinard alleges that prison staff conducted a FibroTest in October 2018 that indicated he had cirrhosis and which led FDOC to provide treatment for Kinard's HCV in June 2019. Id. FDOC contends that this shows that it did not disregard any risk of serious harm because it provided treatment once "Kinard met criteria to be prioritized for treatment." Id. In Kinard's response, he argues that the allegations in his First Amended Complaint state a facially sufficient claim that FDOC acted with deliberate indifference to his serious medical need. Response to FDOC Motion at 5. Kinard maintains that HCV constitutes a serious medical need and that FDOC refused to provide him with DAA, despite it being the standard of care for HCV treatment since 2014, because FDOC determined DAA was too costly. Id. Additionally, Kinard asserts that he sufficiently alleged causation in the First Amended Complaint because he alleged that FDOC's policy resulted in his injuries. Id. at 6.

The Court finds Kinard has sufficiently alleged that FDOC was deliberately indifferent to his serious medical need. In the First Amended Complaint, Kinard asserts that HCV presents a serious medical need that FDOC was aware of as early as 2011 and FDOC did not provide him DAA until 2019, despite it being the standard of care since 2014. While FDOC does not dispute these allegations, it contends that it monitored and ultimately gave Kinard DAA. However, Kinard alleges in the First Amended Complaint that DAA must be provided in a timely manner to ensure their efficacy and delay in treatment increases the risk the treatment will not work. According to Kinard, FDOC intentionally disregarded this risk because it wanted to save money and he suffered

injuries as a result of this delay in treatment. Accepting as true Kinard's factual allegations and drawing all reasonable inferences in favor of Kinard, the Court finds that Kinard has alleged a plausible claim that FDOC violated his constitutional rights. See Fields v. Corizon Health, Inc., 490 F. App'x 174, 185 (11th Cir. 2012) (citing Ancata v. Prison Health Servs., 769 F.2d 700, 705 (11th Cir. 1985) and Anderson v. City of Atlanta, 778 F.2d 678, 688 n.14 (11th Cir. 1985)) (noting that cost cannot justify the lack of timely medical treatment for a serious medical need). Therefore, the FDOC Motion is due to be denied to the extent FDOC contends it is entitled to Eleventh Amendment immunity.

### Statute of Limitations

FDOC next moves to dismiss the First Amended Complaint on the grounds that Kinard brought Counts One and Two of this action outside the four-year statute of limitations. FDOC Motion at 9-10. FDOC maintains that Kinard knew or should have known that FDOC allegedly violated the Eighth Amendment as early as September 2011, the time Kinard asserts in the First Amended Complaint that FDOC diagnosed him with HCV. Id. According to FDOC, Kinard further alleged that he requested treatment throughout his incarceration. Id. at 10. Thus, FDOC maintains that the statute of limitations bars this action.

Kinard does not dispute that the statute of limitations is four years, but argues this action accrued in June of 2019 when FDOC finally treated his HCV with DAA. Response to FDOC Motion at 9-10. Kinard's contention concerning the accrual of his cause of action is premised on the continuing violation doctrine. Id. According to Kinard, he repeatedly requested medical treatment for HCV several times throughout his incarceration but FDOC refused; therefore, FDOC's continued refusal to provide DAA constituted a

continuous injury that did not end until Kinard received DAA treatment in June of 2019. Id. As such, Kinard maintains this action is timely filed. Id. In its reply, FDOC argues that the continuing violation doctrine is inapplicable to this case because Kinard's "allegations establish that he knew that the treatment was needed, that the treatment was available, and that the treatment was being denied on December 31, 2014, at the latest."[3] FDOC Reply at 3. FDOC contends that these events would have alerted a reasonable person to assert his or her rights and file suit. Id.

The statute of limitations for actions brought under the ADA and RA in Florida is four years. Silva v. Baptist Health South Florida, Inc., 856 F.3d 824, 841 (11th Cir. 2017). "Federal law determines when the statute of limitations begins to run," and "[g]enerally, 'the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with reasonably prudent regard for his rights.'" Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003) (quoting Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996)). The Eleventh Circuit has explained:

> The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period. See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1221 (11th Cir.2001). When the violation alleged involves continuing injury, the cause of

---

[3] FDOC contends that Kinard knew of the lack of DAA treatment as late as December 31, 2014, because Kinard alleged in his initial pro se complaint that a treating physician informed him of his HCV diagnosis in July 2014 and that another physician recommended treatment in 2014, but prison officials denied the treatment request. FDOC Reply at 2-3. While FDOC acknowledged that Kinard filed an amended complaint, it contends that Kinard "did not expressly disavow these allegations" in the First Amended Complaint and "additionally alleged [in the First Amended Complaint] that he regularly inquired about his condition and requested treatment of his Hepatitis C, which was denied." Id. at 3. However, once Kinard filed his First Amended Complaint his original complaint became a legal nullity; therefore, the Court will not consider any allegations in the original complaint that Kinard has not raised in the First Amended Complaint. See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).

action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases. Donaldson v. O'Connor, 493 F.2d 507, 529 (5th Cir.1974) (holding that a § 1983 action brought by a former mental patient for continuous civil confinement without psychiatric treatment did not accrue until the patient was released), vacated on other grounds by, O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); Santiago v. Lykes Bros. S.S. Co., 986 F.2d 423, 426 (11th Cir.1993) (discussing Donaldson). "The critical distinction in continuing violation analysis ... is whether the plaintiff[ ] complain[s] of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does." Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir.2003) (quoting Knight v. Columbus, Ga., 19 F.3d 579, 580–81 (11th Cir.1994)) (internal quotation marks omitted). When the plaintiff proves a continuing violation, the plaintiff may "recover for any violations for which the statute of limitations has not expired." Knight, 19 F.3d at 581.

Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007); see also Baker v. Sanford, 484 F. App'x 291, 293 (11th Cir. 2012) (quoting Lavellee v. Listi, 611 F.2d 1129, 1132 (5th Cir. 1980)) (noting that "an 'allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided.'"). Notably, the Eleventh Circuit has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." Ctr. For Biological Diversity v. Hamilton, 453 F.3d 1331, 1335 (11th Cir. 2006).

In the First Amended Complaint, Kinard alleges that in September 2011, following a routine blood draw, he learned that he had HCV and prison medical staff referred him to the Chronic Illness Clinic for further evaluation, after which "[i]t became clear that his HCV was chronic . . . ." First Amended Complaint at 15. Kinard asserts that his HCV infection ultimately developed into advanced liver disease and cirrhosis. Id. According to

Kinard, "[t]hroughout his incarceration, [Kinard] regularly inquired about the condition of his liver and requested HCV treatment, but was consistently denied such treatment." Id. Kinard maintains that prison medical staff did not adequately inform him about the severity of his liver disease and the risks associated with HCV and did not perform the necessary tests to determine the stage and progression of his HCV infection until October 2018. Id. at 15-16. Kinard further alleges that Defendants led him to believe he was on the list to be treated "[b]ut the Defendants had no intention of treating Plaintiff" until June 2019, when a court order required FDOC to begin treating all inmates with HCV. Id. at 17. Notably, Kinard asserts that he repeatedly requested treatment verbally and through the grievance process, but "was repeatedly told that he did not qualify for treatment, that his liver was fine, and that treatment was not clinically indicated." Id. Accepting Kinard's allegations as true, he has sufficiently pled that the continuing violation doctrine applies such that the instant action is not time barred. Notably, Kinard asserts that Defendants provided him with misleading and incorrect information concerning his condition and potential for treatment such that a reasonably prudent plaintiff would have been unable to determine that a violation had occurred. Accordingly, the FDOC Motion is due to be denied to the extent it alleges this action is barred by the statute of limitations.

## **Sufficiency of Kinard's Discrimination Allegations**

Lastly, FDOC contends that Counts One and Two of the First Amended Complaint should be dismissed because Kinard has failed to sufficiently allege that FDOC discriminated against Kinard on the basis of his HCV disability. FDOC Motion at 10-15. According to FDOC, the failure to provide adequate medical treatment does not violate the ADA or RA; instead, a defendant violates these statutes when it discriminates based

on the existence of a disability. Id. at 12-13. FDOC maintains that Kinard has only alleged inadequate medical treatment for his disability and did "not allege any plausible facts that indicate that his alleged disability was a determinative factor in the decision not to treat his chronic HCV infection with DAA medication." Id. at 13-14. Additionally, FDOC avers that Kinard's contentions concerning the Defendants' alleged cost-saving policies means that the decision not to treat Kinard was based on financial considerations rather than his alleged disability. Id. at 14. In his response, Kinard contends that he alleged more than a mere disagreement over his medical treatment. Response to FDOC Motion at 11. According to Kinard, Defendants' policy of not providing DAA, "the only medical treatment available for HCV under the prevailing standard of care," to inmates with chronic HCV amounted to discrimination against inmates with HCV because "inmates with other illnesses (such as HIV) are provided lifesaving medications." Id.

To establish a prima facie case of discrimination under either the ADA or the RA, a plaintiff "must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007) (citing Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001)); Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000) ("Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases.") (citations omitted). Notably, Prison medical services constitute a "service" under the ADA and the RA. Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998) (citations omitted).

For purposes of its motion to dismiss, FDOC does not dispute the first two elements. Instead, at issue in the FDOC Motion is whether or not Kinard has alleged discrimination. The Court finds that accepting Kinard's factual allegations as true and drawing all reasonable inferences in his favor, Kinard has stated a claim of discrimination under the ADA and the RA. Namely, Kinard asserts the FDOC denied him the benefit of medical services because of his HCV. See Hoffer v. Inch, 382 F. Supp. 3d 1288, 1297 (N.D. Fla. 2019) (finding that "a qualified inmate who is denied the benefit of medical services by reason of his disability can state a Title II ADA claim."). As such, the FDOC Motion is due to be denied on this basis and, for the above stated reasons, denied as a whole.

## VI.    Corizon Motion

Corizon contends that Kinard failed to exhaust his claim against it. Corizon Motion at 4-6. According to Corizon, it provided medical care in Florida prisons from September 2013 to May 2016. Id. at 6. However, Corizon alleges that Kinard never filed a grievance concerning his medical condition during the time Corizon provided medical care. Corizon notes that Kinard filed grievances concerning non-medical issues as early as 2013, which it contends demonstrates that the grievance process was available for Kinard. Id. In response, Kinard argues that he did exhaust his remedies as to this claim. Response to Corizon Motion at 7-9. Kinard maintains that governing law does not require him to name a specific defendant in his grievance. Id. at 7. As such, Kinard's formal grievance on March 11, 2019, and the subsequent appeal of that grievance, satisfied the exhaustion requirement because it put prison staff on notice concerning his allegations of the denial and delay of treatment for his HCV dating back to 2011, which included the time frame in

which Corizon provided medical care. Id. at 8. In its reply, Corizon contends that Kinard's 2019 grievance was insufficient to exhaust the factual claims against Corizon because he did not allege facts regarding Corizon's care between 2013 and 2016. Corizon Reply at 2-3. Corizon avers that the 2019 grievance made only passing reference to being diagnosed with HCV in 2011 and focused mainly on his treatment or lack thereof in 2018. Id. at 2. According to Corizon, Kinard "was not grieving treatment in the long-ago past, more than three years after Corizon stopped providing medical service in Florida prisons," and it maintains Kinard could not have grieved Corizon's treatment of his HCV because it "would have been time-barred by the grievance rules." Id. at 3.

The Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before filing an action under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds

> out, and doing so <u>properly</u> (so that the agency addresses the
> issues on the merits)." Pozo,[4] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an

agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States

Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances"
> exception onto the PLRA's exhaustion requirement. The only
> limit to § 1997e(a)'s mandate is the one baked into its text: An
> inmate need exhaust only such administrative remedies as
> are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative

remedies prior to filing a cause of action in federal court is a matter of abatement and

should be raised in a motion to dismiss or be treated as such if raised in a summary

judgment motion. Bryant, 530 F.3d at 1374-75 (citation omitted). The Eleventh Circuit has

explained the two-step process that the Court must employ when examining the issue of

exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he
> may file suit under § 1983. In response to a prisoner suit,
> defendants may bring a motion to dismiss and raise as a
> defense the prisoner's failure to exhaust these administrative
> remedies. See Turner, 541 F.3d at 1081.[5] In Turner v.
> Burnside we established a two-step process for resolving
> motions to dismiss prisoner lawsuits for failure to exhaust. 541
> F.3d at 1082. First, district courts look to the factual
> allegations in the motion to dismiss and those in the prisoner's
> response and accept the prisoner's view of the facts as true.
> The court should dismiss if the facts as stated by the prisoner
> show a failure to exhaust. Id. Second, if dismissal is not
> warranted on the prisoner's view of the facts, the court makes

---

4 Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).
5 Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

> specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam). Additionally, "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

FDOC provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the FDOC. See FLA. ADMIN. CODE r. 33-103.007. Notably, an inmate may bypass the informal grievance step if he or she raises a medical grievance. See FLA. ADMIN. CODE r. 33.103.006(3)(e). An informal grievance must be received within twenty days of when the action being grieved occurred. See FLA. ADMIN. CODE r. 33-103.11(1)(a). If an informal grievance was not required, then the formal grievance must be received within fifteen days from the date on which the grieved action occurred. See FLA. ADMIN. CODE r 33-103.11(1)(b).

Corizon does not challenge the fact that Kinard completed the grievance procedure when Kinard filed his 2019 grievance but maintains that the grievance did not raise factual claims against Corizon and, therefore, the Court should not find exhaustion as to the claims against Corizon. Kinard asserts that his 2019 grievance adequately exhausted this claim because he completed all steps in FDOC's grievance process and the grievance adequately addressed his deprivation of care from 2011 through 2019. Accordingly, at the first step of the Turner analysis, the Court finds that this claim is not due to be dismissed for lack of exhaustion when accepting the prisoner's view of the facts as true. Because dismissal is not warranted at this first stage, the Court next turns to step two to resolve the factual disputes addressed by the parties.

Kinard attached to his response a copy of his March 11, 2019 request for administrative remedy.[6] See Doc. 81.1. In reviewing Kinard's grievance in context, the Court finds that the grievance was not merely limited to what occurred in 2018 but addressed the lack of medical care Kinard received from 2011 through 2018. For instance, Kinard alleged that "[m]edical has known the severity of my hep-c since 2011

---

[6] To resolve a factual dispute about exhaustion, a district court may "consider facts outside of the pleadings . . . so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (footnotes omitted). Additionally, in this circuit, courts may consider documents attached to a motion to dismiss or a response to the same "only if the attached document is:  (1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir.1999)); see also Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co., No. 6:14-cv-6016-Orl-31TBS, 2016 WL 3144103, at *1 (M.D. Fla. June 6, 2016) (quoting Ritz v. Lake County, Ill., No. 08 C 5026, 2010 WL 2025392, at *2 (N.D. Ill. May 2010)) (concluding this rule extends to documents attached to a plaintiff's response to a motion to dismiss). These grievance documents are essential to Kinard's claims and the parties do not dispute their authenticity. Therefore, the Court will consider these documents in evaluating the merits of the motions to dismiss without converting them to motions for summary judgment.

and rather then [sic] offer me treatment of any sorts they continued to ignore this enhancing of my Fibrosis level rapidly enhancing." Id. Kinard also stated that "[t]he medical department deliberately let my liver get worse, and develop into cirrhosis since they were aware since 2011." Id. Additionally, Kinard alleges in the First Amended Complaint that Defendants did not adequately inform him about the severity of his liver disease and the health risks associated with HCV, failed to perform the necessary tests that would have indicated the stage and progression of his HCV, and led him to believe he was on the list to be treated but that Defendants had no intention of treating him. First Amended Complaint at 15-17. In fact, Kinard alleges that he did not receive the FibroTest to determine his fibrosis score until October 2018. Id. at 16.

Kinard's allegations in his grievance and First Amended Complaint do not concern multiple separate episodes, but rather one continuing deprivation of medical care over a period of years. As such, this claim is not related to one specific date such that Kinard had to grieve it within fifteen days. Kinard's completion of the prison's grievance procedures in 2019 sufficiently exhausted this claim because it "accomplished § 1997e(a)'s purpose by alerting prison officials to the problem and giving them the opportunity to resolve it before being sued." Parzyck, 627 F.3d at 1219. Prison officials were still capable of resolving the ongoing deprivation of Kinard's medical care, and in fact, they granted Kinard the relief he requested once he appealed the denial of his initial grievance. Because Kinard alleges an ongoing Eighth Amendment violation, his 2019 grievance was timely and sufficiently exhausted this claim in much the same way this action is not barred by the statute of limitations. See Dunlap v. Corizon Health Care, No. 5:15-CV-328-WTH-GRJ, 2017 WL 3530103, at *5 (N.D. Fla. Feb. 1, 2017), report and

recommendation adopted, No. 515CV00328WTHGRJ, 2017 WL 3526662 (N.D. Fla. Aug. 15, 2017) (finding that because plaintiff alleged ongoing deprivation of medical care over a five-month span, he "could have initiated the grievance procedure by filing a formal grievance for failing to receive medical care following the initial infection at any point during those five months."); Ellis v. Vadlamudi, 568 F. Supp. 2d 778, 785 (E.D. Mich. 2008) (analogizing continued violation doctrine to exhaustion principles to find that denial of treatment that predated filing of grievance was exhausted where plaintiff alleged ongoing denial of treatment). Moreover, the prison did not treat Kinard's grievance as untimely; therefore, this Court will not either. See Whatley, 802 F.3d at 1215 (11th Cir. 2015) (finding "a procedural flaw ignored by a prison cannot later be resurrected by the District Court to defeat exhaustion.") (citation omitted). In light of the above analysis the Corizon Motion is due to be denied.

### VII.    Centurion Motion

Centurion moves to dismiss Count Three of the First Amended Complaint because the United States District Court for the Northern District of Florida's decision in Carl Hoffer, et al. v. Mark S. Inch, No. 4:17-cv-214-MW/CAS (N.D. Fla.), a class action case of which Centurion alleges Kinard is a member, bars this claim. Centurion Motion at 3-13. According to Centurion, the doctrine of issue preclusion binds Kinard to the factual findings as determined in the Hoffer class action suit and Centurion is entitled to the benefit of collateral estoppel on the issues determined in Hoffer. Id. at 5-9. For purposes of establishing issue preclusion, Centurion maintains that:  (1) the factual and legal issues Kinard raises in the First Amended Complaint are identical to those raised in Hoffer; (2) Centurion is in privity with FDOC and Kinard had a full and fair opportunity to litigate the

issues in <u>Hoffer</u>; (3) the findings and judgment in <u>Hoffer</u> adjudicated the issues raised in the First Amended Complaint; and (4) the issues raised here were necessary to the judgment in <u>Hoffer</u>. <u>Id.</u> at 6-9. Centurion argues that Kinard has failed to allege a claim of deliberate indifference against Centurion when the <u>Hoffer</u> factual findings[7] are considered in relation to the claims raised in the First Amended Complaint because the Northern District found Centurion was not deliberately indifferent to the inmates' serious medical needs because it and its physicians attempted to obtain DAA but FDOC budgetary restraints would not allow it. <u>Id.</u> at 9-13. Alternatively, Centurion asserts that should the Court grant the FDOC Motion on the grounds of Kinard's failure to raise an Eighth Amendment claim and statute of limitations, then the Court should grant Centurion relief on the same grounds. <u>Id.</u> at 13.

Kinard contends that Centurion cannot invoke issue preclusion because not only was it not the prevailing party in <u>Hoffer</u>, but Centurion was not a party at all in <u>Hoffer</u>. Response to Centurion Motion at 4-7. Even if Centurion could establish privity with FDOC, Kinard asserts that Centurion's alleged privity would mean that Centurion was deliberately indifferent to Kinard's serious medical needs. <u>Id.</u> at 6. Additionally, Kinard argues that the <u>Hoffer</u> factual findings do not bind Kinard because he had no standing to appeal favorable

---

[7] Centurion listed the following six factual findings it contends are binding on this Court: (1) FDOC contracted with Centurion to provide medical care in Florida's prisons; (2) FDOC, not its independent contractors, was responsible for securing funding for DAA; (3) from 2016 through 2018, FDOC made legislative budget proposals for the purchase of DAA and Centurion was not involved in approval of those budget requests; (4) when Centurion took over management of prison medical care, one of its employees encouraged doctors to refer inmates with HCV for DAA treatment but doctors were unable to do so because of FDOC funding issues; (5) a Centurion employee told another doctor to develop a list of patients with HCV and to stage them for treatment appropriately; and (6) DAA treatment was not being provided due to a lack of FDC funding. Centurion Motion at 4.

findings. Id. at 6-7. Instead, Kinard maintains that only FDOC could appeal the findings favorable to the plaintiffs in Hoffer; therefore, "while [FDOC] and its privies can be subject to collateral estoppel, Kinard cannot. Id. at 7. Next, Kinard avers that the six findings Centurion relies on were not necessary to the Northern District's judgment in Hoffer, id. at 7-15, because the Northern District's "factual observations" about various contractors, including Centurion, "were merely subsidiary factual issues designed to 'place things in context' for the Court's ultimate finding" regarding FDOC's violation of the Eighth Amendment. Id. at 8. Kinard also asserts that these factual findings do no exculpate Centurion because the findings show that Centurion deliberately chose not to treat the plaintiffs because of financial reasons. Id. at 15-16. Accordingly, Kinard contends he has stated a facially sufficient claim for relief under the Eighth Amendment. Id. at 16.

Centurion counters that the Hoffer findings are binding on both it and Kinard and Kinard is misconstruing the law concerning issue preclusion. Centurion Reply at 2. According to Centurion, the findings are favorable to Kinard and the Northern District made those findings in support of the permanent injunction entered on behalf of the class. Id. To the extent Kinard argues that the findings establish Centurion was deliberately indifferent, Centurion avers that the existence of factual findings is distinct from the issues of whether or not Kinard proved each and every element against Centurion. Id. at 4.

The Court must first address Centurion's request to take judicial notice of the Hoffer case, specifically the order granting class certification and the order on cross-motions for summary judgment. Centurion Motion at 3, n.2; Doc. 37. At any stage of the proceeding, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Eleventh Circuit has cautioned that judicial notice should be employed sparingly because it "bypasses the safeguards which are involved with the usual process of proving facts by competent evidence." Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997). "[T]he kinds of things about which courts ordinarily take judicial notice are (1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." Id. Generally, the Eleventh Circuit has distinguished between taking judicial notice of the fact that court records or court rulings exist versus taking judicial notice of the truth of the matters stated within those court records or court filings. See Grayson v. Warden, Comm'r, Ala. DOC, 869 F.3d 1204, 1225 (11th Cir. 2017). Thus, judicial notice of related court cases can only be taken either to recognize the judicial act that the order represents or the subject matter of the litigation. Accordingly, the Court takes judicial notice of the two Hoffer orders to the extent that it recognizes the judicial act that the orders represent and the subject matter of the litigation.[8]

In Hoffer, the Northern District certified a class consisting of "all current and future prisoners in the custody of the Florida Department of Corrections who have been diagnosed, or will be diagnosed, with chronic hepatitis C virus (HCV)." Hoffer v. Jones,

___

[8] The Court notes that "[a] district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999)). Here, the Hoffer orders are public records that are not subject to reasonable dispute and Kinard does not dispute the authenticity of these orders. Therefore, the Court may consider them without converting the instant motions to dismiss into motions for summary judgment. See id.

323 F.R.D. 694, 700 (N.D. Fla. 2017). The plaintiffs, like Kinard, alleged FDOC's denial of DAA as treatment because of a cost-savings policy violated the ADA, RA, and Eighth Amendment. Id. at 696. Notably, the plaintiffs did not bring suit against Centurion or Corizon, two of the three medical providers FDOC used to staff its prisons during the relevant periods of the suit. Following an evidentiary hearing, the Hoffer court granted a preliminary injunction against the defendants, see Hoffer v. Jones, 290 F. Supp. 3d 1292, 1306 (N.D. Fla. 2017), and ultimately entered a permanent injunction after resolving issues raised on summary judgment. See Hoffer v. Inch, 382 F. Supp. 3d at 1293. Although the Court takes judicial notice of the existence and outcomes of these orders in Hoffer, the Court cannot take judicial notice of the Northern District's factual findings absent determining that issue preclusion applies here. See Grayson, 869 F.3d at 1225.

Issue preclusion "means that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" Bravo-Fernandez v. United States, 137 S. Ct. 352, 356 (2016) (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)); see also Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 140 S. Ct. 1589, 1594 (2020) (noting that "issue preclusion (sometimes called collateral estoppel) . . . precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment."). The Eleventh Circuit has explained:

> "Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit. There are several prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that

> action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir.1986). "Collateral estoppel ... has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

CSX Transp., Inc. v. Bhd. of Maint. of Way Employees, 327 F.3d 1309, 1317 (11th Cir. 2003).

Contrary to Kinard's contention otherwise; the principle of res judicata, under which the doctrine of issue preclusion falls, does not apply only to bar a losing party. See Ladd v. City of W. Palm Beach, 681 F. App'x 814, 816 n.2 (11th Cir. 2017) (rejecting "as wholly without merit, plaintiff's argument that res judicata applies only to bar a losing party."). As such, the Court now turns to analyze the applicability of issue preclusion in this case. Centurion was not a party in Hoffer; therefore, it must establish privity with FDOC in order to demonstrate that issue preclusion applies in this suit. Regarding the issue of privity,

> The general rule, set forth long ago by the Supreme Court, states that "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." Martin v. Wilks, 490 U.S. 755, 762, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989) (footnote omitted). Six exceptions to this rule have been recognized:

>> A court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate

26

> issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants.
>
> Griswold v. Cty. of Hillsborough, 598 F.3d 1289, 1292 (11th Cir. 2010) (citing Taylor v. Sturgell, 553 U.S. 880, 128 S.Ct. 2161, 2172-73, 171 L.Ed.2d 155 (2008)). Collectively, these exceptions are commonly described using the catchall term "privity." E.g., Taylor, 553 U.S. at 895 n.8, 128 S.Ct. at 2172 n.8.

Grayson, 869 F.3d at 1224. Centurion maintains that it was in privity with FDOC because FDOC contracted with Centurion to provide medical care in Florida's prisons. Centurion Motion at 7-8. Thus, "by the very nature of the contractual relationship and the injunctions entered by the Hoffer court, Centurion was bound by the Court's findings." Id. at 8. Based on Centurion's allegations, it appears they are relying on the second and third types of privity discussed in Grayson and Taylor. In Taylor, the Supreme Court noted that "[q]ualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." Taylor, 553 U.S. at 894. The Eleventh Circuit has recognized that employer-employee or principal-agent relationships may establish privity under the substantive legal relationship exception. See Sealey v. Branch Banking and Trust Company, 693 F. App'x 830, 835 (11th Cir. 2017) (citing Citibank, N.A. v. Data Lease Financial Corp., 904 F.2d 1498, 1502-03 (11th Cir. 1990)). Accordingly, it would appear that Centurion was in privity with FDOC for purposes of the Hoffer judgment.

The Court next turns to whether or not the issues Centurion seeks to have preclusive effect in this case were critical and necessary to the judgment in Hoffer. The Court concludes they were not. The fact that Centurion provided medical care at a time relevant during the class period in Hoffer was not necessary to the Northern District's

determination that FDOC violated the Eighth Amendment. Centurion cites to several facts concerning the lack of funding; however, while FDOC may have been responsible for seeking funding through the legislature and ultimately did not secure additional funding, this finding was not critical to the judgment because it was FDOC's policy of cost-cutting, not the limitations in funding, that was at the heart of the plaintiffs' deliberate indifference claim in Hoffer. Indeed, in issuing the preliminary injunction, the Northern District specifically stated that "funding is no excuse for FDC's failure to provide treatment." Hoffer, 290 F. Supp. 3d at 1300. As to the facts concerning employees of Centurion referring and recommending treatment with DAA, these facts again relate to lack of funding, which the Northern District found was not an excuse for FDOC's failure to treat the plaintiffs. In light of the above, the Court finds that Centurion has not established that issue preclusion applies here to bar Kinard from raising a claim of deliberate indifference against it. To the extent Centurion relies on FDOC's contentions to support dismissal, the Court finds these arguments are unavailing for the same reasons expressed above. Accordingly, the Centurion Motion is due to be denied.

In consideration of the foregoing, it is now

ORDERED:

1.     Defendant FDOC's Motion to Dismiss (Doc. 88) is **DENIED.**

2.     Defendant Corizon Health, Inc.'s Motion to Dismiss (Doc. 77) is **DENIED**.

3.     Defendant Centurion of Florida, LLC's Motion to Dismiss (Doc. 89) is **DENIED**.

4.      Defendants must file their answers to Kinard's First Amended Complaint by **July 27, 2020**. Thereafter, the Court will issue a separate order setting deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of June, 2020.

_Marcia Morales Howard_
**MARCIA MORALES HOWARD**
United States District Judge

Jax-8
C:
Counsel of Record